Christopher M. Mikson
**AKIN GUMP STRAUSS HAUER & FELD LLP**
2001 Market Street, Suite 4100
Philadelphia, PA 19103
Telephone:  215-965-1200
Facsimile:  215-965-1210
Email:  cmikson@akingump.com

Oleg Stolyar
**AKIN GUMP STRAUSS HAUER & FELD LLP**
2029 Century Park East, Suite 2400
Los Angeles, California 90067
Telephone:  310-229-1000
Facsimile:  310-229-1001
Email:  astolyar@akingump.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| RENOVA INDUSTRIES LTD., a Bahamas corporation.<br><br>                    Plaintiff,<br><br>       v.<br><br>NEW YORK MOTORS CORPORATION, a corporation registered in New Jersey, and ALEXANDER L. VARSHAVSKY, an individual.<br><br>                    Defendants. | Civil Action No.<br><br>**COMPLAINT FOR**<br><br>(**1**)  **BREACH OF CONTRACT RE: ORAL AGREEMENT;**<br>(**2**)  **BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING RE: ORAL AGREEMENT;**<br>(**3**)  **BREACH OF CONTRACT RE: AMENDED AGREEMENT;**<br>(**4**)  **BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING RE: AMENDED AGREEMENT;**<br>(**5**)  **QUANTUM MERUIT;**<br>(**6**)  **UNJUST ENRICHMENT;**<br>(**7**) **PROMISSORY ESTOPPEL; AND**<br>(**8**)  **FRAUD**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Renova Industries Ltd. ("RIL") brings this action against defendants Alexander L. Varshavsky ("VAL") and New York Motors Corp. ("NYMC") (collectively "Defendants") and alleges as follows:

**IDENTIFICATION OF PARTIES**
**(L.Civ.R. 10.1)**

1. Plaintiff Renova Industries Ltd. is a corporation registered and existing under the laws of the Bahamas, with its registered office located at 2nd Terrace, West Centreville, Nassau, Bahamas.

2. Defendant New York Motors Corp. is a corporation registered and existing under the laws of the State of New Jersey, with its registered office located at 1075 Edward Street, No. 203, Linden, New Jersey 07036. Upon information and belief, NYMC's principal place of business is located at 1437 Pinewood St., Unit 43, Rahway, NJ 07065.

3. Defendant Alexander L. Varshavsky is the chief executive officer and beneficial owner of NYMC. Upon information and belief, Mr. Varshavsky is a resident and citizen of the State of New Jersey, residing at 3 Round Hill, Holmdel, New Jersey 07733.

**NATURE OF THE ACTION**

4. This case arises out of a false promise made by Defendants to RIL, which induced RIL to enter into a contract that was then repeatedly breached by Defendants. As the result, though RIL fulfilled all of its obligations under the contract, it received zero compensation for its services, and was damaged in an amount in excess of $1,745,542.38, the exact amount to be determined at trial.

**JURISDICTION AND VENUE**

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, in that there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

6. This Court has personal jurisdiction over Defendants, because both Defendants are citizens of New Jersey for jurisdictional purposes.

7. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) and (c), because both Defendants reside in this district.

## THE ORAL AGREEMENT AND RIL'S PURCHASE OF STARWHITE SHARES

8. In August 2011, VAL, a New Jersey businessman from the former Soviet Union, contacted Victor F. Vekselberg, a Russian entrepreneur and founder of the Renova Group (a conglomerate of companies which includes RIL), with a request that Mr. Vekselberg help VAL arrange for the purchase of 10 percent of the shares of Starwhite Limited ("Starwhite"), a holding company based in Cyprus. VAL informed Mr. Vekselberg that he was also representing the interests of NYMC in this request.

9. Mr. Vekselberg, on behalf of RIL, then negotiated and entered into an oral agreement (the "Oral Agreement") with VAL and NYMC, in August 2011, which provided as follows:

(i) RIL, either directly or indirectly through one of its affiliated entities, would purchase 200 shares of Starwhite for $20 million on Defendants' behalf. Those 200 shares (the "Starwhite Shares") comprised 10 percent of all Starwhite shares.

(ii) No later than December 31, 2013, Defendants would buy those Starwhite Shares from RIL, for $20 million.

(iii) As consideration for RIL's agreement to enter into the Oral Agreement, Defendants would pay RIL 10 percent interest on $20 million, compounded annually as of the last day of each calendar year, from the date that RIL purchased the Starwhite Shares (the "Purchase Date") to the date that Defendants bought out those shares from RIL for the same $20 million (the "Buy-Out Date").

10. At all pertinent times, Mr. Vekselberg was acting on behalf of RIL in connection with his negotiations and the Oral Agreement with Defendants.

11. To satisfy its obligations under the Oral Agreement, RIL caused one of its affiliated companies, A-Win Consultants Ltd. ("A-Win"), to enter into a Share Purchase Agreement (the

"09/05/11 SPA") with Sideline Offshore Ltd. ("Sideline"), a minority shareholder of Starwhite. On September 9, 2011, pursuant to the 09/05/11 SPA, A-Win purchased the Starwhite Shares from Sideline for $20 million.

12. RIL was induced to enter into the Oral Agreement and to purchase the Starwhite Shares by Defendants' promise that they would pay RIL 10 percent interest per annum on the $20 million purchase price, from the Purchase Date to the Buy-Out Date. RIL would not have entered into the Oral Agreement or purchased the Starwhite Shares absent this promise of compensation.

**DEFENDANTS CONFIRM THE EXISTENCE OF THE ORAL AGREEMENT, BUT SEEK TO REDUCE RIL'S COMPENSATION**

13. After purchasing the Starwhite Shares, RIL submitted a draft option agreement (the "Option Agreement") to Defendants, as a proposed mechanism to implement the remaining terms of the Oral Agreement. The Option Agreement was to be executed in February 2012 and, among other things: (i) provided NYMC with a call option to purchase the Starwhite Shares from A-Win for $20 million by December 31, 2013; and (ii) provided A-WIN with a put option to sell the Starwhite Shares to NYMC at any time following December 31, 2013, should the call option not be timely exercised. The Option Agreement further provided for 10 percent annual interest on $20 million to be paid by NYMC to A-Win, accruing from September 9, 2011 (the Purchase Date) until either the call or put option were exercised (the Buy-Out Date).

14. However, Defendants refused to sign the Option Agreement unless RIL agreed to: (i) reduce the per annum interest rate from 10 percent to 5 percent; and (ii) have that interest begin accruing on December 31, 2011, rather than September 9, 2011 (the actual Purchase Date).

15. In other words, after RIL had expended $20 million on behalf of Defendants to acquire the Starwhite Shares, Defendants refused to buy those shares unless RIL's agreed-to compensation for its services was cut by more than half.

16. To that end, on or about February 13, 2012, Defendants submitted a Term Sheet to RIL, admitting the existence of the Oral Agreement, but setting forth a new and amended 5 percent annual interest rate. The Term Sheet otherwise included all the terms of the Oral Agreement, as set forth in paragraph 9 above.

17. On April 28, 2012, Defendants further submitted to RIL a redlined Option Agreement (the "04/28 Option Agreement"), reflecting the reduced interest rate of 5 percent, as well as a later start date of December 31, 2011, as opposed to September 9, 2011, for accrual of that interest.

18. On May 10, 2012, in an effort to save the deal and avoid legal proceedings, RIL agreed to amend the Oral Agreement by: (i) reducing the per annum interest rate to 5 percent; and (ii) having that interest begin accruing on December 31, 2011, rather than the actual Purchase Date. (Hereinafter, the parties' amendment of these two terms of the Oral Agreement will be referred to as the "Amended Agreement.")

19. The parties agreed that the Amended Agreement would be implemented *via* the signing of the 04/28 Option Agreement.

### DEFENDANTS REFUSE TO PAY ANY COMPENSATION WHATSOEVER FOR RIL'S SERVICES

20. Unfortunately, Defendants then refused to sign the 04/28 Option Agreement, just as they had previously refused to comply with the Oral Agreement. Instead, Defendants demanded that the Starwhite Shares be sold to them pursuant to a simple share purchase agreement, with the interest issue to be separately addressed later.

21. In other words, Defendants now refused to pay RIL any interest whatsoever.

22. Given Defendants' refusal to implement the Amended Agreement by signing the 04/28 Option Agreement, the Amended Agreement never became effective.

23. Therefore, RIL directed A-Win to sell, and A-Win sold, the Starwhite Shares to Maxbond Limited, a Cyprus corporation controlled by Defendants, for $20 million. That sale was completed on July 13, 2012, pursuant to a share purchase agreement, dated June 20, 2012. By selling the Starwhite Shares to Defendants for $20 million, RIL fulfilled all of its remaining obligations under the Oral Agreement.

24. RIL then demanded that Defendants comply with the Oral Agreement by paying RIL the 10 percent interest accrued between September 9, 2011 (the Purchase Date) and July 13, 2012 (the Buy-Out Date), in the amount of $1,745,542.38. Defendants failed to do so.

25. Indeed, Defendants have failed and refused to pay RIL any interest whatsoever. Thus, though RIL fulfilled all of its obligations under the Oral Agreement, it has received zero compensation for its services.

## FIRST CLAIM FOR RELIEF
### Breach of Contract Re: Oral Agreement
### (Against All Defendants)

26. RIL reasserts and incorporates herein by reference the allegations contained in Paragraphs 1 through 25 above.

27. RIL and Defendants entered into a valid contract, the Oral Agreement.

28. RIL has performed all of the terms and conditions required of it under the Oral Agreement.

29. Defendants have breached the Oral Agreement, including but not limited to, by refusing to pay RIL the agreed upon interest as consideration for RIL's services.

30. As a result of these and other breaches, Defendants have wrongfully denied RIL the benefits RIL was to receive under the Oral Agreement, including but not limited to lost revenue.

31. RIL has been damaged as a result of Defendants' breaches in an amount in excess of $1,745,542.38, the exact amount to be proven at trial.

## SECOND CLAIM FOR RELIEF
### Breach of the Implied Covenant of Good Faith and Fair Dealing
### Re: Oral Agreement
### (Against all Defendants)

32. RIL reasserts and incorporates herein by reference the allegations contained in Paragraphs 1 through 31 above.

33. Implicit in the contract between RIL and Defendants was a covenant that Defendants would use their best efforts to give effect to the terms of the Oral Agreement.

34. This implied covenant required Defendants to act in good faith at all times in an attempt to ensure that RIL received the benefits of the Oral Agreement.

35. Defendants breached this implied covenant of good faith and fair dealing by deliberately acting to deprive RIL of the benefits of the Oral Agreement by, among other things: (i)

refusing to buy the Starwhite Shares from RIL unless it agreed to reduced compensation for its services; and (ii) depriving RIL of any consideration under the Oral Agreement.

36. RIL has been damaged as a result of Defendants' breaches in an amount in excess of $1,745,542.38, the exact amount to be proven at trial

### THIRD CLAIM FOR RELIEF
### Breach of Contract Re: Amended Agreement
### (Against all Defendants)

37. RIL reasserts and incorporates herein by reference the allegations contained in Paragraphs 1 through 36 above.

38. If RIL does not have a cause of action against Defendants for breach of Oral Agreement because the Court finds that the Amended Agreement was (and is) effective, or for some other reason, then RIL has a cause of action against Defendants for breach of the Amended Agreement

39. RIL and Defendants entered into a valid contract, the Amended Agreement, as reflected in the Term Sheet, the 04/28 Option Agreement, and written correspondence among the parties.

40. RIL has performed all of the terms and conditions required of it under the Amended Agreement, except as excused by Defendants' breach.

41. Defendants have breached the Amended Agreement, including but not limited to, by refusing to pay RIL the agreed upon interest as consideration for RIL's services.

42. As a result of these and other breaches, Defendants have wrongfully denied RIL the benefits RIL was to receive under the Amended Agreement, including but not limited to lost revenue.

43. RIL has been damaged as a result of Defendants' breaches in an amount in excess of $500,000.00, the exact amount to be proven at trial.

### FOURTH CLAIM FOR RELIEF
### Breach of the Implied Covenant of Good Faith and Fair Dealing
### Re: Amended Agreement
### (Against all Defendants)

44. RIL reasserts and incorporates herein by reference the allegations contained in Paragraphs 1 through 43 above.

45. If RIL does not have a cause of action against Defendants for breach of the implied covenant of good faith and fair dealing with respect to the Oral Agreement because the Court finds that the Amended Agreement was (and is) effective, or for some other reason, then RIL has a claim against Defendants for breach of the implied covenant of good faith and fair dealing with respect to the Amended Agreement.

46. Implicit in the contract between RIL and Defendants was a covenant that the Defendants would use their best efforts to give effect to the terms of the Amended Agreement.

47. This implied covenant required Defendants to act in good faith at all times in an attempt to ensure that RIL received the benefits of the Amended Agreement.

48. Defendants breached this implied covenant of good faith and fair dealing by deliberately acting to deprive RIL of the benefits of the Amended Agreement by, among other things: (i) failing to pay RIL the compensation agreed to in the Amended Agreement; and (ii) depriving RIL of any consideration under the Amended Agreement.

49. RIL has been damaged as a result of Defendants' breaches in an amount in excess of $500,000.00, the exact amount to be proven at trial.

### FIFTH CLAIM FOR RELIEF
**Quantum Meruit**
**(Against all Defendants)**

50. RIL reasserts and incorporates herein by reference the allegations contained in Paragraphs 1 through 49 above.

51. If RIL does not have a cause of action against Defendants for either breach of the Oral Agreement or breach of the Amended Agreement, then RIL has a cause of action against Defendants for quantum meruit.

52. RIL provided services for Defendants in good faith, by causing one of its affiliates, A-Win, to purchase the Starwhite Shares for $20 million, and then causing A-Win to sell those same shares, at the same price, to Defendants.

53. RIL rendered these services at Defendants' request, and Defendants accepted these services by purchasing the Starwhite Shares from A-Win.

54. RIL had a good faith expectation that it would be paid for its services, as it would not have been willing to invest the effort and expense of purchasing the Starwhite Shares for $20 million, only to then sell them to Defendants for the same price. However, RIL was not paid anything for its services.

55. The reasonable value of RIL's services is 10 percent interest per annum on the $20 million expended by RIL to purchase the Starwhite Shares on behalf of Defendants, from the Purchase Date to the Buy-Out Date.

56. In the alternative, the reasonable value of RIL's services is 5 percent interest per annum on $20 million, during the same time period (*i.e.*, September 9, 2011 through July 13, 2012), as reflected in the Term Sheet signed by Defendants.

### SIXTH CLAIM FOR RELIEF
**Unjust Enrichment**
**(Against all Defendants)**

57. RIL reasserts and incorporates herein by reference the allegations contained in Paragraphs 1 through 56 above.

58. RIL has conferred a benefit on Defendants, by purchasing the Starwhite Shares from Sideline on Defendants' behalf for $20 million, and then selling those same shares to Defendants for the same price.

59. Defendants have accepted and retained the benefit conferred upon them by RIL under circumstances that render it inequitable and unjust for Defendants to retain that benefit without paying RIL for the full value thereof.

60. Because Defendants have been unjustly enriched at the expense of RIL, Defendants must make restitution to RIL for the total amount that Defendants received and/or the total loss RIL has suffered, in an amount in excess of $1,745,542.38, the exact amount to be proven at trial.

### SEVENTH CLAIM FOR RELIEF
**Promissory Estoppel**
**(Against all Defendants)**

61. RIL reasserts and incorporates herein by reference the allegations contained in Paragraphs 1 through 60 above.

62. Defendants made a clear and definite promise to RIL that they would pay RIL 10 percent annual interest on $20 million, as compensation for RIL's purchase of the Starwhite Shares on Defendants' behalf, from the date that RIL purchased those shares (the Purchase Date) to the date that RIL was paid back the $20 million purchase price by Defendants (the Buy-Out Date).

63. Upon information and belief, Defendants knew or should have reasonably expected that RIL would rely on this promise.

64. RIL reasonably and foreseeably relied to its detriment on Defendants' promise by entering into the Oral Agreement, expending $20 million on Defendants' behalf to purchase the Starwhite Shares, and incurring expenses related to that purchase and subsequent sale of the Starwhite Shares to Defendants.

65. RIL has been harmed as a result of its reasonable reliance on Defendants' promise. Accordingly, justice can only be served by stopping Defendants from reneging on their promise to RIL under the doctrine of promissory estoppel.

### EIGHTH CLAIM FOR RELIEF
### Fraud
### (Against all Defendants)

66. RIL reasserts and incorporates herein by reference the allegations contained in Paragraphs 1 through 65 above.

67. RIL is informed and believes, and based thereon alleges, that at the time that Defendants made the aforementioned promise to RIL, set forth in paragraphs 12 and 62, they had no intention of fulfilling that promise.

68. RIL is informed and believes, and based thereon alleges, that at the time Defendants made the aforementioned promise to RIL, they did so solely for the purpose of inducing RIL to enter into the Oral Agreement.

69. At the time RIL entered into the Oral Agreement it was ignorant of Defendants' secret intention not to perform in accordance with the terms of that agreement. RIL could not, in the exercise of reasonable diligence, have discovered Defendants' secret intention not to perform.

70. RIL reasonably and justifiably relied upon Defendants' promise in entering into the Oral Agreement. If RIL had known Defendants' actual intentions, it would not have entered into the Oral Agreement nor purchased the Starwhite Shares on behalf of Defendants.

71. As a result of the foregoing, RIL has been damaged in an amount in excess of $1,745,542.38, the exact amount to be determined at trial.

72. RIL is informed and believes, and based thereon alleges, that the wrongful conduct of Defendants as described herein was actuated by actual malice and accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by this wrongful conduct. Defendants' wrongful conduct entitles RIL to an award of punitive damages against Defendants, and each of them, under Title 2A of the New Jersey Statutes, N.J.S. 2A:15-5.12, in an amount substantial enough to punish Defendants, and to deter Defendants and others from similar conduct in the future.

## DEMAND FOR JURY TRIAL

Plaintiff Renova Industries Ltd., under Federal Rule of Civil Procedure 38, hereby requests a trial by jury on all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, RIL respectfully prays for judgment against Defendants, as follows:

1. For compensatory damages in an amount in excess of $1,745,542.38, the exact amount to be proven at trial;

2. For consequential and incidental damages, in an amount to be proven at trial;

3. For the reasonable value of RIL's services, in an amount to be proven at trial;

4. For punitive and exemplary damages to punish Defendants' willful and malicious conduct, and to deter similar conduct in the future;

5. For pre-judgment and post-judgment interest, at the legal interest rate;

6. For costs and attorneys' fees; and

7. For such other and further relief as the Court deems just and proper.

Respectfully submitted,

Date:  May 31, 2013         By:      */s/  Christopher M. Mikson*
Christopher M. Mikson
**AKIN GUMP STRAUSS HAUER & FELD LLP**
2001 Market Street, Suite 4100
Philadelphia, PA 19103
Telephone:  215-965-1200
Facsimile:  215-965-1210
Email:  cmikson@akingump.com

Oleg Stolyar
**AKIN GUMP STRAUSS HAUER & FELD LLP**
2029 Century Park East, Suite 2400
Los Angeles, California 90067
Telephone:     310-229-1000
Facsimile:     310-229-1001
Email:  astolyar@akingmup.com

*Attorneys for Plaintiff*

## CERTIFICATION OF MATTER IN CONTROVERSY
### (L.Civ.R. 11.2)

Pursuant to Local Civil Rule 11.2, the undersigned hereby certifies that with respect to the matter in controversy herein, neither plaintiff nor any of plaintiff's attorneys is aware of any other action pending in any court, or of any pending arbitration or administrative proceeding, to which this matter is subject.

Date:  May 31, 2013         By:      /s/  Christopher M. Mikson
                                     Christopher M. Mikson
                                     **AKIN GUMP STRAUSS HAUER & FELD LLP**
                                     2001 Market Street, Suite 4100
                                     Philadelphia, PA 19103
                                     Telephone:  215-965-1200
                                     Facsimile:  215-965-1210
                                     Email:  cmikson@akingmup.com

                                     Oleg Stolyar
                                     **AKIN GUMP STRAUSS HAUER & FELD LLP**
                                     2029 Century Park East, Suite 2400
                                     Los Angeles, California 90067
                                     Telephone:  310-229-1000
                                     Facsimile:  310-229-1001
                                     Email:  astolyar@akingmup.com

                                     ***Attorneys for Plaintiff***